# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

DARWIN MARKEITH HUGGANS,   )
                           )
      Petitioner,   )
                           )
v.                             )       Case No. 4:13 CV 323 CDP
                           )
UNITED STATES OF AMERICA,   )
                           )
      Respondent.   )

## MEMORANDUM AND ORDER

Movant Darwin Markeith Huggans brings this case under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Huggans was convicted at a bench trial of conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and a separate charge of attempt to possess with intent to distribute more than five kilograms of cocaine. Case No. 4:07CR541 CDP. The government filed an information under 21 U.S.C. §851 charging him with two prior felony drug convictions, so I sentenced him to life imprisonment, as was mandatory under 21 U.S.C. § 841(b)(1)(A). The Eighth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Huggans*, 650 F.2d 1210 (8th Cir. 2011). The United States Supreme Court denied Huggans' petition for writ of certiorari. *Huggans v. United States*, 132 S. Ct. 1583 (2012).

Huggans raises nine claims as grounds for his § 2255 motion. Because the record affirmatively refutes Huggans's claims, I will deny the motion without a hearing.

## I. Grounds Raised in § 2255 Motion

Huggans' § 2255 motion raises the following grounds for relief:

1. Counsel had an actual conflict of interest, depriving Huggans of his Sixth Amendment right to counsel, and counsel failed to inform Huggans or the court of the conflict.

2. The trial court erred in failing to inquire into counsel's actual conflict of interest, depriving Huggans of his Sixth Amendment right to conflict free counsel.

3. The trial court erred in allowing the matter to proceed to a bench trial, depriving Huggans of his right to due process and counsel was ineffective for not requesting a jury trial based on the court's concern in having a bench trial at all.

4. Trial counsel was ineffective for failing to adequately investigate or prepare for Huggans's case.

5. The trial court erred in failing to correctly advise Huggans of the § 851 consequences and counsel was ineffective for failing to object to the court's incorrect § 851 statement in violation of Huggans' due process rights under the Fifth and Sixth Amendments.

6. Counsel was ineffective in advising Huggans to proceed to a bench trial without proper advice.

7. Trial counsel was ineffective in failing to properly advise petitioner regarding possible sentences or the impact of § 851 enhancements in taking a plea versus going to trial.

8. Huggans was deprived of his Sixth Amendment right to effective assistance of appellate counsel.

Huggans also filed a supplement, arguing that under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the government was required to prove beyond a reasonable doubt the prior convictions that formed the basis for the § 851 sentencing enhancement.

## II. Background

The On appeal, the Eighth Circuit summarized the background facts as follows:

> This case arose out of an investigation by the Drug Enforcement Agency ("DEA") into a drug-distribution conspiracy headed by Luis Sais from a jail in Mexico City, where he was imprisoned. Beginning in 2001, Curtis Rice began shipping stolen cars to Sais's associates in Mexico in exchange for marijuana. In 2005, Rice began transporting cocaine, which was supplied by Sais's associates, from Mexico by boat into Texas and then in four-by-four trucks to cities across the United States, including St. Louis, Missouri. Beginning in December of 2005, Rice began supplying Sais's cocaine to Anthony Stiles in St. Louis.
>
> Stiles had been dealing drugs with Huggans since 2001, receiving increasing quantities of cocaine from Huggans until Huggans lost his cocaine connection in 2005. After Stiles obtained the Sais connection, Huggans began buying cocaine from Stiles. According to Stiles's estimate, Stiles delivered approximately 600 kilograms of cocaine to Huggans over a six to nine month period.
>
> By March of 2007, the Drug Enforcement Administration ("DEA") had caught up with Rice and Stiles, and they agreed to cooperate. Stiles named Huggans as his primary customer, and DEA agents developed a plan to conduct a narcotics transaction between Rice, Stiles, and Huggans. In conversations recorded by DEA agents, Stiles let Huggans know that Rice had cocaine for sale at $17,000 per kilogram. On April 10, 2007, Rice and Huggans met to discuss

Huggans's purchase of twenty kilograms of cocaine. Subsequently, they agreed to meet for the exchange on April 12, 2007. On that day, Huggans met Rice, bringing a backpack full of money. Rice and Huggans traveled in Rice's car to a hotel. They planned to count the money in the hotel, whereupon Rice would call his "guy" to deliver the cocaine. The hotel room in which the meeting occurred was equipped with both audio and video recording devices, which captured the money count. Huggans asked Rice to call his "guy." Instead, Rice called nearby DEA agents. Rice and Huggans left the hotel room with Rice carrying the money. DEA agents arrested Huggans outside the room and seized the money. A count revealed $329,320, which was $10,680 short of the agreed-upon price of $340,000 for the twenty kilograms of cocaine.

*Huggans*, 650 F.3d at 1216–17.

### III. Discussion

### Grounds 1 and 2 – Conflict of Interest

In Ground 1, Huggans argues that his trial counsel, Nick Zotos, labored under a conflict of interest because his law partner, Frank Fabbri, was under investigation by the federal government and was ultimately convicted and disbarred. In Ground 2 Huggans argues that his Sixth Amendment rights were further violated because the court failed to inquire into this alleged conflict.

Huggans claims that he disclosed detailed information to Fabbri and met with Fabbri to discuss his case on numerous occasions. Huggans alleges, on information and belief, that in order to curry favor with prosecutors, Fabbri provided information about Huggans to the government, which led the government to a witness against Huggans. Huggans further alleges that Fabbri encouraged two

of his clients to provide information about Huggans to the government. Finally, Huggans alleges that this conflict affected Zotos's representation because Zotos failed to adequately advise him and failed to conduct an adequate investigation.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Huggans must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* Second, Huggans "must show that the deficient performance prejudiced the defense." *Id.* at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995).

The right to effective assistance of counsel encompasses the right to conflict-free counsel. *See Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Holloway v. Arkansas*, 435 U.S. 475 (1978). Huggans argues that an "actual conflict" existed, but his allegations of conflict are not the sort to which the presumption of prejudice applies:

> [T]he Supreme Court has limited the automatic reversal rule of *Holloway* to cases "where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). By contrast, in cases involving a failure to inquire into other types of potential conflicts, *Mickens* requires that the defendant show that "a conflict of interest actually affected the adequacy of [counsel's] performance," rather than *Strickland* prejudice. *Id*. at 170-71 & nn. 3, 4, 122 S.Ct. 1237, *quoting Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

*Ausler v. United Sta*tes, 545 F.3d 1101, 1104 (8th Cir. 2008). Thus, under the rule of *Ausler* and *Mickens,* Huggans must show: 1) that a conflict of interest existed, and 2) that the conflict adversely affected his attorney's subsequent performance. *Id.* Huggans has not shown these things; the most he has shown is that because his lawyer's partner was under investigation and ultimately was indicted and imprisoned, his lawyer *must* have acted contrary to Huggans' interests. This is not sufficient to show that attorney Zotos's performance was affected in any way.

After Huggans' arrest in April of 2007 (in possession of the $329,000 in cash, as detailed above), he was released without charges. He consulted with the

Zotos and Fabbri firm, who had represented him in the past. Zotos had discussions with Huggans and with the Assistant United States Attorney, who told him Huggans would be indicted. Huggans was indicted in September of 2007, and was released on bond. Huggans' trial took place in late January of 2009, and I took the case under advisement. I announced the guilty verdict on March 13, 2009. Sentencing was continued several times, in part because Huggans retained new counsel; he was sentenced in October of 2009.

Fabbri pleaded guilty to the felony charge of failure to file IRS Form 8300 (Currency Transaction Report) in the United States District Court for the Southern District of Illinois on May 30, 2007. He was sentenced in October of 2007 and was in prison until shortly before the Huggans trial began in January of 2009.

Both Zotos and Fabbri have provided affidavits averring that Fabbri was not involved in Huggans's case in any way. Huggans has provided an affidavit stating that he met with Fabbri on several occasions and discussed the case with him. I need not resolve this factual dispute, however, because even assuming Fabbri was involved somewhat in Huggans' case before or after Fabbri went to prison, the argument regarding a conflict still fails. Contrary to Huggans' assertion, an actual conflict of interest is not automatically created when a defendant's attorney is under investigation by a different office in a different jurisdiction for a different crime. Huggans's reliance on *United States v. Edelmann*, 458 F.3d 791 (8th Cir.

2006) is misplaced.  In *Edelmann*, the Eighth Circuit determined that a defendant's attorney had a conflict of interest because he was under investigation for the same type of crime by the same office that was prosecuting the defendant.  *Id.* at 808. Here, Fabbri was under investigation for a tax crime by the United States Attorney's office in the Southern District of Illinois, while Huggans was being prosecuted for drug crimes by the United States Attorney's office in the Eastern District of Missouri.

Moreover, Huggans himself admits that he knew of this purported conflict of interest well before trial, yet he failed to raise the issue at any time.  In *United States v. Bonilla-Marquez*, 924 F.2d 770, 771 (8th Cir. 1991), the Eighth Circuit held that a defendant had waived the right to conflict-free counsel by failing to bring the conflict to the court's attention before trial, stating that the defendant "had no right to conceal the conflict from the Court, later citing it as justification for a new trial.  He knew exactly what he was doing and must abide by the consequences."  This is a similar situation.  If there was a conflict, it was one that Huggans knew about and could have raised earlier.

But even assuming a conflict of interest existed, Huggans has failed to show that it adversely affected his trial counsel's performance.  Huggans first claims, on information and belief, that Fabbri provided information to the government which led it to a witness.  But there is no evidence to support this claim, and there is

substantial evidence to the contrary. In addition to Fabbri's affidavit that he did not even know the witness, the government presented the affidavit of a St. louis Police Officer who indicated that the witness was discovered when he received a report from the Fairview Heights DEA office regarding an arrest of someone who told authorities his cocaine supplier was a person named "Mark" from St. Louis. That officer then interviewed the witness in prison, and the witness identified Huggans as the "Mark" who had supplied him with drugs. There is simply no basis for Huggans' claim that this witness was somehow connected to Fabbri.

Huggans next claims that he was prejudiced because Fabbri encouraged two of his clients to provide information to the government about Huggans. Huggans has provided affidavits from two inmates, Mario Lucas and Robin Randle, in which they both claim that Fabbri asked them – in 2006 and 2007 – to give information about Huggans to the government. Fabbri, in an affidavit submitted by the government, denies the claim, stating that he never even knew of any connection between Huggans and his other clients. Again, I need not resolve this factual conflict because it is immaterial – Huggans has not claimed that Lucas, Randle, or any other individual actually provided information to the government. Most importantly, Huggans has not presented any evidence that any of this affected attorney *Zotos's* representation of him. It was Zotos who represented him at trial

and before trial, while Fabbri was in prison, and there is no evidence that any alleged conflict affected Zotos's performance.

Huggans argues in Ground 2 that the court was aware of the issue with Fabbri and should have made an inquiry into the conflict of interest. Specifically, Huggans alleges that I was aware of the conflict because I was one of the judges who signed the order removing Fabbri from the federal bar. This does not mean, however, that I knew of any potential conflict of interest that Zotos may have had. Because Huggans failed to raise the issue and the Court was not otherwise made aware of any conflict, the Court was under no obligation to conduct an inquiry, as demonstrated by *Holloway v. Arkansas*, 435 U.S. 475 (1988) and *Atley v. Ault*, 191 F.3d 865 (8th Cir.1999). Grounds 1 and 2 are without merit and are denied.

**Grounds 3 and 6 – Bench Trial**

In Ground 3 Huggans claims that I erred in allowing his case to proceed to a bench trial and in Ground 6 he argues that his counsel was ineffective for advising him to waive a jury. A defendant can waive his right to a jury trial. Fed. R. Crim. P. 23(a). A waiver of jury trial is valid if it is voluntarily, knowingly, and intelligently made. *Dranow v. United States*, 325 F.2d 481, 482 (8th Cir. 1963). There is no question that Huggans voluntarily, knowingly, and intelligently waived his right to a jury trial, and I will deny Grounds 3 and 6 for the reasons that follow.

At the pretrial conference, after hearing evidence of Huggans' bond violations and ruling that his bond would be revoked, I then considered other pretrial matters, including the motion to sever and for separate trials of the two counts.  After I denied the motion to sever, I discussed the bench trial issue with counsel.  Zotos explained that he did not believe a jury would be able to compartmentalize the two counts.  I raised the concern that Huggans might try to come back later and say "I was forced to waive my jury trial because the judge wouldn't sever."  (Transcript of January 15, 2009 pretrial hearing, Doc. # 166 at p. 106, l. 11-17).  The prosecutor responded that Huggans was experienced in the criminal justice system, pointing out that in prior cases he had once gone through a jury trial and once pleaded guilty, "and now he's trying the third way, which is in front of a judge."  (Doc. # 166 at p. 106, l. 18-22).  Defense counsel explained that his client was experienced, and had gone through a jury trial before.  (Doc. # 166 at p. 104, l. 14-20).  Counsel stated that he and Huggans were concerned that jurors would automatically assume guilt once they heard that his client had been caught with $329,000 in cash.  We discussed scheduling of the trial and I then took a 10 minute break so that Huggans could talk with his attorney again to make sure he really wanted to waive a jury trial.  Because I was concerned that Huggans might later try to change his mind or argue, as he is here, that his waiver was somehow improper, I explained to him before going on the break that if he waived the jury

he would not be able to change his mind and that "once you waive it, you've waived it forever." (Doc. # 166 at p. 111, l. 11-13).

After the break I explained the jury rights to Huggans in detail. Huggans assured me that he understood his rights, had discussed the issue fully with his counsel, and that he was satisfied with Zotos's representation of him. Both Zotos and Huggans stated that Huggans had done independent legal research on the issues related to his case.[1] Huggans wished to argue that meeting the informant with the cash was not a "substantial step" constituting an attempt, and both he and Zotos believed this argument was more appropriately presented to a judge than to a jury. Although the prosecutor pointed out that this was an issue that could be raised in a motion for acquittal even in a jury trial, both Zotos and Huggans stated they believed a bench trial would be better. Huggans stated:

> It's what I want to do, and the only thing I can do, Your Honor, is say based on the little research that I have done, and I've read cases where the justice has to spell out the difference between an attempt case and a conspiracy case. I read one case where they state, and they both charged on an 846 but they are two totally different crimes, and the justice had to spell out to another judge exactly the difference between attempt and conspiracy, although they both charged under 846, so I stand here a layman, and the only thing I have to go by is the advice of my attorney, and that's what I have to do. I mean, like I say, what I read, basically like I just stated, if the justices have to spell out to other judges the difference between a conspiracy and an attempt charge, and both of them are charged under 846, truly, Your Honor, I

---

[1] Huggans actually critiqued the local law libraries, explaining that he had spent a great deal of time in the Eighth Circuit Library, which in his opinion was much better than the law libraries at Washington University or St. Louis University. (Doc. 166 at p. 121, l. 8-13).

can't expect 12 people that don't know the difference from a Black's Law Dictionary to a Federal Code Book, so therefore it's like, basically, I don't know what I'm saying if it's right, but the Government—my hands is tied. I have to go with my best choice.

(Doc. # 166 at p. 119, l. 5-23). Huggans asserted that he had spoken intensively and at great length about the waiver with his attorney, and he made clear that based on his attorney's advice and the research he had done, he believed waiving the jury was the best decision for him. Moreover, he stated that no one was threatening or making him waive his right to a jury trial. Huggans waived his right to a jury trial because he believed a judge would be better able to determine if he took a substantial step and would be less likely to assume guilt based on his possession of a large sum of money. This was a voluntary, knowing and intelligent waiver, made for reasons of sound trial strategy.

Despite his voluntary, knowing, and intelligent waiver, Huggans claims that I abused my discretion in accepting the waiver.[2] Specifically, Huggans claims I should have denied the waiver because I allegedly expressed reservations over whether I should grant the request and because I knew information about the case that the jury would not otherwise have known. Huggans mischaracterizes my statements informing him of his rights as "profound reservations." I did have

_____

[2] Ground 3 is raised as trial error, and so could have been raised on direct appeal but was not. It is thus procedurally barred, but because Huggans has claimed ineffective assistance of both trial and appellate counsel with regard to this issue, and because the argument is without any merit, I am dealing with it here on the merits rather than rejecting it as procedurally barred.

reservations – as I do in every case – about whether Huggans would later try to argue that the waiver was involuntary, so I made every effort to be sure that Huggans was fully informed of the implications of his waiver. I advised him that I knew information a jury would not know because I had ruled on his suppression and bond revocation motions. After advising Huggans that the jury would not be aware of the detention and suppression issues, I asked whether or not he still wished to waive his jury trial. Huggans responded,

> Yes, ma'am. I know that you would know all this stuff anyway, and I have to reiterate from my understanding of reading cases for attempt and conspiracy that a lot of justices can't differentiate a conspiracy from an attempt charge, so the Appeals court have had to tell justices the difference, and so I'm hoping and praying—I won't say that. I'm quite sure you know the difference, Your Honor.

Doc. # 166 at p. 125, l. 7–13).

Contrary to Huggans' assertion, I did not express profound reservations regarding his waiver. I merely informed Huggans of all the relevant issues with his waiver so that he could not later—as he is trying to do now—claim that his waiver was in some way defective.

Huggans also claims that his counsel was ineffective in advising him to proceed to a bench trial without proper advice. Huggans claims that he would not have waived his jury trial if he had fully understood the import of my knowledge of the pre-trial information. Moreover, Huggans argues that Zotos misinformed him about his sentencing exposure. He alleges that had he known about the

potential mandatory life sentence, he would not have waived the jury trial because one of the reasons his counsel advised him to waive the trial was that I would be more lenient at sentencing if he agreed to "streamline" the process. These arguments also fail.

Huggans' claim that he would not have waived jury trial had he fully understood the import of my knowledge is refuted by the record. I specifically explained that I was referring to the evidence from the suppression and bond revocation motions. As confirmed by the Court of Appeals, the evidence presented at trial was more than sufficient to sustain the convictions. Huggans' current claim that he would have asked for a jury trial if he had known he was facing mandatory life directly contradicts his repeated statements that he was waiving a jury because he thought he had a better chance of acquittal with a judge. In any event, as discussed more fully in the section below, Huggans *did* know he was facing mandatory life.

Zotos was not ineffective in advising Huggans to waive his jury trial. Zotos states in his affidavit that he conferred with Huggans for hours regarding whether or not to waive a jury trial, and that both agreed that a judge would be better than a jury at drawing the distinction of what constitutes an attempt. Huggans confirmed at the hearing that he had discussed the issue fully with Zotos. He went on to explain that in his prior trial he believed the judge had abdicated his responsibility

because the jury had the responsibility for deciding the case, and so he thought he had a better chance with a judge. (Doc. # 166 at p. 113, l. 15 to p. 115, l. 16). Zotos even sought counsel from other lawyers, who all agreed that a jury would have a hard time acquitting Huggans of an attempt when it heard that he brought $329,000 to a hotel room. This was a strategic decision made by Zotos and the defendant jointly, and Zotos's advice did not fall below standard outlined in *Strickland*. Grounds 3 and 6 fail.

**Grounds 4, 5 and 7 – Investigation and Sentencing Advice**

In Ground 4, Huggans alleges that his counsel was ineffective for failing to adequately investigate or prepare for his case. In Ground 5 he alleges that I erred in advising him of the sentence he was facing and that Zotos was ineffective for failing to object to my incorrect statement about the sentence. In Gound 7 he claims that Zotos was ineffective for failing to properly advise him about possible sentences and whether he should plead guilty instead of going to trial.

*Failure to Present Buyer-Seller Defense*

Huggans claims that his trial counsel was ineffective for not presenting a buyer-seller defense. Although Huggans acknowledges that the Eighth Circuit addressed and rejected the argument that he was just a buyer and not a conspirator, Huggans alleges that the Eighth Circuit was not presented with a record that contained a full buyer-seller defense. But "claims which were raised and decided

on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops v. United States,* 339 F.3d 777, 780 (8th Cir.2003) (internal quotation marks and citation omitted); *see also, Thompson v. United States,* 7 F.3d 1377, 1379 (8th Cir.1993) (citing *United States v. Holtzen,* 718 F.2d 876, 878 (8th Cir.1983)).  Trial counsel's vigorous cross-examination of the government's witnesses, especially Stiles, adequately presented this defense at trial.  But I and the Court of Appeals have already rejected the argument.  Huggans cannot raise it again.

*Failure to Request In Camera Review*

Huggans next argues that his counsel was ineffective in failing to request an *in camera* review of the presentence investigation reports of the government's witnesses.  Huggans recognizes that his counsel informally asked for the PSRs. Huggans was not prejudiced by the failure to additionally request an *in camera* review.  Huggans does not suggest that the PSRs contained exculpatory information or that I would have granted the request for an *in camera* review. Beyond his conclusory statement that the failure resulted in the presentation of an incomplete case, Huggans has not demonstrated any prejudice.

*Failure to Investigate and Impeach Key Witnesses*

Huggans argues that his counsel was ineffective in failing to adequately investigate the case and uncover key impeachment evidence.  Huggans has

provided affidavits of two alleged co-conspirators, Sammy Jefferson and Eric Earnest, as well as the information contained in their PSRs, as impeachment evidence that his counsel should have found and used at trial. Huggans presented this evidence to the Eighth Circuit in arguing that I should have granted a new trial, but the Court held that he had waived the argument. The Eighth Circuit's characterization of the evidence, however, confirms that Huggans was not prejudiced by the failure to find or use this information at trial: "[T]he information provided in the affidavits is not material to Huggans's guilt." *Huggans*, 630 F.3d at 1225. Moreover, the Eighth Circuit stated that "the information in the PSRs regarding the quantity of drugs for which Jefferson and Earnest were responsible is 'merely cumulative' of Stiles's plea agreement and PSR. At trial, counsel for Huggans vigorously cross-examined Stiles on the disparity" regarding the alleged amount of cocaine he sold Huggans. *Id.* The information now presented as "key impeachment evidence" would not have produced a different result at trial.

*Pretrial Sentencing Advice*

Grounds 5 and 7 both argue that Huggans did not understand that he was facing mandatory life imprisonment. Huggans claims that had he been properly notified that he was facing a mandatory life sentence, he would have pursued plea negotiations and accepted a plea. According to Huggans, he learned of the mandatory life sentence late in the trial after it was "too late" to accept a plea.

Huggans's claim that he was not aware of his sentencing exposure is refuted by the record. Zotos's affidavit avers that he informed Huggans that he was "looking at life" after the indictment and superseding indictment were filed. During the bond revocation portion of the hearing, in arguing for the presumption of detention and that defendant was a flight risk, the Assistant United States Attorney stated:

> … today the Government has filed an information alleging two prior drug convictions by Darwin Markeith Huggans, and is seeking a statutory enhancement under Section 845 of Title 21. That would make *upon conviction of either Count I or Count II a mandatory term of life imprisonment*, . . .

(Doc.# 166 at p. 86, l. 24 to p. 87, l. 4) (emphasis added). Zotos argued that Huggans' risk of non-appearance had not changed:

> The defendant knows his prior from 1989. He knows his prior from 1985. I was there representing him in 1995. *We have known all along the possibility of the filing*, so there is no change as to flight risk.

(Doc. # 166 at p. 90, l. 14-17) (emphasis added). Later in the same hearing I stated:

> Additionally, he is facing, based on this information that I just looked at, it appears he's facing mandatory life imprisonment if convicted, and if the Government can prove these things, he was facing a mandatory minimum sentence of ten years just based on what was alleged in the indictment.

Doc. # 166 at p. 98, l. 10-14. Huggans claims that this statement did not actually alert him to the fact that he was facing a mandatory life sentence, and that this

violated his due process rights,[3] and further that counsel was ineffective for failing to object to the statement.

This statement was not confusing in the context of the discussion. Based on the indictment, Huggans had faced a mandatory minimum sentence of ten years on each count; with the § 851 filing, he faced a mandatory term of life imprisonment on each count. I did not misstate his sentencing exposure, and to the extent that Huggans argues that his counsel was ineffective for not objecting to my "confusing" statement, this argument fails. In the lengthy colloquy at the pretrial hearing, Huggans never indicated any confusion about the sentence he was facing.

Moreover, Huggans must show some "credible, non-conclusory evidence that he would have pled guilty had he been properly advised." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003). Huggans has provided no evidence to suggest that he would have pled guilty instead of going to trial. Zotos asserts that Huggans was committed to a trial, as he thought the case law and cross-examination would be effective, and Huggans' many statements to me at the pretrial hearing are entirely consistent with Zotos's affidavit. Grounds 4, 5 and 7 are all without merit.

_____

[3] To the extent Huggans brings Ground 5 as a claim of trial court error, it could have been raised on appeal and was not, so it is procedurally barred. Again, however, I am reaching it on the merits because he also alleges ineffective assistance of both trial and appellate counsel.

**Ground 8 – Ineffective Assistance of Appellate Counsel**

Ground 8 is a claim for ineffective assistance of appellate counsel for failing to raise any of the claims now asserted that should have been raised on appeal. Because none of the grounds has merit, appellate counsel was not ineffective in failing to raise them. And of course, to the extent Huggans contends that appellate counsel should have raised the ineffective assistance of trial counsel claims on appeal, this argument also fails. Ineffective assistance of counsel claims should ordinarily be raised in a collateral proceeding rather than on direct appeal, *see United States v. Poe*, 764 F.3d 914, 918 (8th Cir. 2014) .

**_Alleyne_ Claim**

Finally, Huggans alleges that the Supreme Court decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013) affects his case. In *Alleyne*, the Supreme Court held that any fact that increases the statutory minimum sentence for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. 133 S. Ct. at 2155. Thus, citing *Alleyne,* Huggans argues that prior convictions used to enhance the statutory minimum sentence under 21 U.S.C. § 851 must be submitted to a jury and found beyond a reasonable doubt. Huggans's argument fails. *Alleyne* specifically recognized that it was not changing the rule of *Almendarez–Torres v. United States*, 523 U.S. 224 (1998), which held that the fact

of a prior conviction need not be proven to a jury. *See Alleyne*, 133 S. Ct. at 2160 n. 1. The Eighth Circuit has specifically held that *Alleyne* does not require that enhancements under § 851 be proven beyond a reasonable doubt, as they continue to fall under the exception in *Almendarez–Torres* and are correctly determined by the court as a sentencing factor. *See United States v. Abrahamson*, 731 F.3d 751, 752 (8th Cir. 2013); see also *United States v. Hunter,* 770 F.3d 740, 745 (8th Cir. 2014) .

## IV. Evidentiary Hearing and Certificate of Appealability

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo– Lopez v. United States,* 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). A hearing is not required when the claim is inadequate on its face or the record affirmatively refutes the factual assertions upon which the claim is based. *Id.* Because Huggans's claims are either inadequate or affirmatively refuted by the records and files before me, I will not hold a hearing.

I will also not grant a certificate of appealability, because Huggans has not made a substantial showing of the denial of a federal constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable

jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).

**IT IS HEREBY ORDERED** that Darwin Markeith Huggans's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Huggans has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of June, 2015.